FANNIE W. JOHNSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 15301.    Promulgated September 19, 1927.

Value of plantation at March 1, 1913, determined.

*L. L. Hamby, Esq., C. W. Dudley, Esq.,* and *M. O. Carter, C. P. A.,* for the petitioner.
*W. F. Gibbs, Esq., W. H. Lawder, Esq.,* and *Brice Toole, Esq.,* for the respondent.

In this proceeding petitioner seeks a redetermination of her income tax for the year 1919, for which the respondent has determined a deficiency of $125,033.47. The petitioner alleges error on the part of the Commissioner in his determination of the value of the Panther Burn Plantation at March 1, 1913, as a basis for determining the gain or loss upon the sale of that plantation by the petitioner in 1919. The specific errors alleged are in respect to the value of

cultivated land, land under hardwood timber, land under cypress timber, hardwood-timber values, and cypress-timber values. The value of the improvements, equipment, and personal property has been agreed by the parties at interest to be $168,940.32.

### FINDINGS OF FACT.

Petitioner is an individual and a resident of Vicksburg, Miss. She inherited from her father at the time of his death in 1906, the plantation known as "Panther Burn," containing 12,357 acres, and situated in Washington and Sharkey Counties, Miss. She was the owner of this plantation on March 1, 1913, and continued to be the owner thereof, until May 1, 1919, when she sold it for $1,200,000, upon the following terms: $400,000 was paid in cash on the date of the sale, and the remainder was represented by 10 promissory notes of the vendees in the amount of $80,000, each, payable on the 1st day of May of each successive year, with interest at the rate of 6 per cent per annum from the date until paid, the first note being payable on May 1, 1920, and the last note payable on May 1, 1929. Subsequent to the sale the petitioner, during the calendar year 1919, received from the vendees, in addition to the foregoing, $16,485.72, as reimbursement to her of certain expenses incurred by her in connection with the operation of the plantation. She also incurred $5,114.75 legal expenses which she paid out in connection with the sale of the plantation.

This plantation, on March 1, 1913, contained 6,767 acres of cultivated land; 4,285 acres of land covered by hardwood timber, and 1,305 acres of land covered by cypress timber. The plantation, which was divided into three parts, having a manager in supervision of each part in respect of the cultivated area, was divided into lots of from 10 to 40 acres each, each lot being rented out to tenants, together with the tenant houses and all improvements contained on each lot. There were several hundred tenant houses, three managers' houses, a mansion for occupancy by the owner of the plantation, and several auxiliary buildings, such as servants' quarters, barn and garage, all built of sound cypress timber. There were also numerous corncribs, cotton houses, seed houses, three cotton gins, blacksmith shop, two schoolhouses, one for white and one for colored people, two churches, one for white and one for colored people, and a large, well-stocked plantation store, all of which belonged to and formed a part of the plantation, and all of which was in full operation.

There was one main road or highway going through the center of the plantation and separate roads leading from each of the three parts of the plantation to the owner's mansion, to the churches, schoolhouses, blacksmith's shop, and the store. All of the tenant

houses were accessible to the roads leading to all parts of the plantation. There were three bridges across a stream, known as "Deer Creek," which runs through the plantation. The main line of the Yazoo & Mississippi Valley R. R. runs through the property, and a railroad station, known as "Panther Burn" was located thereon. The entire plantation was completely fenced and its population, including the tenants and their families, was about 1,500 people.

There were four deep artesian wells on the place and a water service pump at each tenant house.

The improvements and personal property on the plantation, consisting of various buildings, machinery, bridges, delco plant, farming implements, seed inventory, accounts receivable, stock in the store, and mules, were stipulated to have been of the value on March 1, 1913, of $168,940.32. The property was regarded as the best plantation in that section of Mississippi, was well organized, and enjoyed the highest reputation. The principal crop grown was long-staple cotton, which was sold under the trade name of "Panther Burn" and had an established reputation for its high quality.

The land covered in hardwood timber, which was adjacent to the cultivated land, contained the same character of soil as the cultivated land and, when cleared, was equally, if not more, productive. The land covered by cypress timber was of a very rich character and quite susceptible of cultivation when cleared and drained.

There were the following quantities of various kinds of growing timber on the plantation: 27,351,000 feet of high-grade cypress, including only trees 12 inches in diameter and upwards to 30 inches in diameter; 20,885,000 feet of hardwood timber, of which 11,857,000 feet were gum of 12 inches and upwards in diameter; 1,235,000 feet of overcup oak 14 inches and up in diameter; 729,000 feet of red oak 14 inches and up in diameter; 1,086,000 feet of elm 14 inches and up in diameter; 223,000 feet of ash 10 inches and up in diameter; 136,000 feet of cottonwood 12 inches and up in diameter; 494,000 feet of miscellaneous hardwoods and 5,125,000 feet of small timber, being less than the foregoing diameters in respect of the various kinds.

All of the timber was close to and easily accessible to the Yazoo & Mississippi Valley R. R., which ran through the plantation.

All of the tenant houses were occupied and the plantation enjoyed the reputation of having thoroughly contented tenants.

On March 16, 1919, about six weeks before the sale in question, a cyclone struck the plantation and made a path approximately 400 yards wide and extending throughout the main body of the hardwood timber, a distance of several miles, blowing down all the trees in its path and seriously damaging 3,000,000 feet of the timber thereon. This cyclone also blew down the mansion and killed the petitioner's husband, who, ever since the petitioner had owned the

plantation, had been in sole and complete charge of it. This cyclone also destroyed several tenant houses.

Petitioner was 63 years of age, and she had never had any experience in managing or running a plantation of this sort, or any other kind, and, upon the death of her husband, was advised by her closest friends to make a quick sale of the entire plantation, and was told that if it remained unsold and without any competent head or management, demoralization would result and heavy losses would follow. Petitioner, thereupon, immediately placed the matter in the hands of her friend and advisor, former Governor John M. Parker, of Louisiana, who, within the course of a few days, made arrangements to effect a walk-out sale of the entire plantation to four individuals, Senator Percy, B. O. McGee, a Mr. Dean, and a Mr. Wood, for $1,200,000, upon the terms hereinbefore stated. The plantation was never advertised for sale. The four men to whom it was sold were individuals who were well known in the community, financially responsible, thoroughly familiar with the territory and willing to pledge themselves to carry out every contract made with every tenant on the property and generally to see that the place was conducted as it had always been conducted. An offer of $100,000 more in this brief time was made for the place; but it was not accepted.

In October, 1919, five months after the sale of the plantation, the purchasers sold the timber on it for $500,000.

The value of petitioner's plantation at March 1, 1913, was as follows:

| | |
|---|---:|
| Cultivated land, 6,767 acres, at $80.00 | $541,360.00 |
| Land under hardwoods, 4,285 acres, at $22.50 | 96,412.50 |
| Land under cypress, 1,305 acres, at $3.00 | 3,915.00 |
| Gum, 11,520,000 feet, at $3.41 per M | 39,283.20 |
| Overcup oak, 1,200,000 feet, at $6.50 per M | 7,800.00 |
| Red oak, 708,000 feet, at $5.20 per M | 3,681.60 |
| Ash, 1,056,000 feet, at $8.77 per M | 9,261.12 |
| Mixed cypress, 2,688,000 feet, at $6.66 per M | 17,902.08 |
| Cottonwood, 132,000 feet, at $4.88 per M | 644.16 |
| Miscellaneous, 480,000 feet, at $1.95 per M | 936.00 |
| Cypress, 27,551,000 feet, at $6.66 per M | 183,489.66 |
| | 904,685.32 |
| Plus agreed value of personal property and improvements | 168,940.32 |
| Total value | 1,073,625.64 |

The profit arising from the sale in 1919 is the difference between $1,211,370.97 and $1,073,625.64, or $137,745.33.

### OPINION.

LANSDON: The plantation here in question was sold early in the year 1919 for a total consideration of $1,211,370.97. The respondent asserts that a substantial profit, based on the fair market value or

price of the property at March 1, 1913, was realized. The only question before us is the fair market value or price of the property at the basic date. Each party called numerous witnesses, and the evidence is the voluminous opinion and expert testimony of such witnesses. After careful study and analysis of the entire record of the proceeding, we have determined the values of the various categories of which the property consisted at March 1, 1913, as set forth *supra* in our findings of fact.

> *Judgment will be entered on 15 days' notice, under Rule 50.*

Considered by STERNHAGEN and ARUNDELL.